Castor Abréu Rivera et al., Plaintiffs and Appellants, v. Andrés M. Díaz, substituted by his heirs, the widow Elvira Guardia and his legitimate parents Juan Pedro Díaz and Julia Talavera, and the Maryland Casualty Company, Defendants and Appellees.

No. 7379. Argued December 3, 1937.—Decided February 18, 1938.

*Luis Apellániz Storer* for appellants. *Juan B. Soto, Juan F. Soto* and *Enrique Igaravídez* for appellees.

Mr. Justice Travieso delivered the opinion of the Court.

The plaintiffs, who are brothers of Concepción Abréu Rivera and allege to be his sole and universal heirs, filed a suit for damages against Andrés M. Díaz, substituted upon his death by his legitimate heirs, and against the Maryland Casualty Company.

It is alleged in the complaint, among other things:

"IV. That on the 16th of July 1934, about two thirty in the afternoon, the above mentioned automobile 'Chevrolet' number 915. operated by its owner, Andrés M. Díaz, driver's license number 3597, while travelling toward the place known as 'Martín Peña' along Fernández Juncos Avenue, in Santurce, P. R., in or about the neighborhood of Stop 26½, struck the person of Concepción Abréu Rivera, 16 years of age, while she was walking on the extreme right-hand side of said avenue, in front of and in the same direction that

the vehicle driven by Andrés M. Díaz was travelling, that is from San Juan to Martín Peña, and then and there the said Concepción Abréu Rivera was violently knocked down to the pavement and fell against the concrete curb which borders that avenue on its south side.

"*    *    *    *    *    *    *

"VI. That due to the above stated collision between the vehicle driven by said Andrés M. Díaz and the body of the aforementioned Concepción Abréu Rivera, the latter received blows on the head which caused the fracture of her craneum and numerous contusions and bruises in other parts of her body as a result of which she died at the Municipal Hospital of San Juan, P. R., a few moments later."

The only specific acts of negligence imputed to Andrés M. Díaz are that he was driving his car at more than 30 kilometers per hour and that he did not reduce his speed when he came up to the deceased, Concepción Abréu Rivera.

After the complaint was dismissed by the District Court of San Juan, the plaintiffs appealed and assigned five errors which may be grouped into two, to wit:

■■■■ "That the lower court erred in its interpretation and weighing of the evidence, and decided the case with passion and prejudice."

The trial judge made the following analysis of the evidence introduced by the plaintiffs:

"Vicente Suárez, one of the principal witnesses for the plaintiff, testified that on July 16, 1934, he was the owner of a shop at stop 26, Fernández Juncos Ave., and that a few moments before the accident Concepción and her companion had come into his shop to protect themselves from the rain. That as soon as it stopped raining hard, the two girls started out in the direction of Martín Peña and a moment later a car went by his shop at a high rate of speed. That the witness looked out of the door because the speed at which the car was travelling attracted his attention, inasmuch as it was so excessive that upon passing over the puddles in the street it splashed water into the door of his shop. That he was in front of the counter, near the door and when the automobile went by he immediately stepped out into the street where he saw the two girls stretched out on the pavement at a distance of about 150 meters from the shop. That when he stepped out to see the automobile he closed his store and after he helped to place the deceased in the car, he reopened it.

That he did not testify before the municipal judge or the district attorney, because he would have had to close his shop and this would have meant a loss of business. That his clerk was not in the store at the time because he was sleeping. Finally he testified that he sent word to the father of the other girl who was wounded because he was a friend and also a merchant like himself.

"The court found this witness entitled to no credibility whatsoever, and the impression that he gave us was that of a false witness. Such is his surprise at the passing of an automobile by his shop at a speed of 35 to 40 miles per hour (that was what he testified) that he abandon his business to go out into the highway and observe such an interesting spectacle. In order to further exaggerate the speed at which the car was moving, he states that when the vehicle went past his door, he was in front of the counter, near the door and in spite of his rapid exit, when he reaches the highway, that is when he crosses the threshold of the door to his shop, so speedily has the vehicle passed that it had time not only to cover the distance of 150 meters, but to skid, and the two girls were already stretched out on the road, without his being able to see what had happened prior to the moment that the girls fell. He then abandons his place of business, closes the only door to the shop and takes himself to the scene of the accident to lend first aid to the girls, and does not return to his establishment until he has left them in the vehicle which was to take them to the hospital, and he does all this and sacrifices his business notwithstanding the number of persons who were present at the place and could have done what he testifies to having done. And yet, although he had a clerk, he found it impossible to appear and testify before the prosecuting attorney or the municipal judge, on the ground that he would have to abandon his business and this would be against his interests. He testified that he was a friend and fellow-merchant of one of the girl's fathers.

"If one reads the answers given to the able cross-examination made by counsel for defendants, the falsehood of this witness will be immediately observed.

"The other witness for the plaintiffs, Carlos V. Roger, who was in the same shop at the moment of the accident, and who testified as to the exaggerated speed of the car, is likewise unworthy of credit. This witness testified that he is at present working, and was working on July 16, 1934, in the office of the 'Britania' hat factory and in spite of the fact that July 16, 1934, was a Monday and not a holiday and although he testified that he attended work in the morning, no satisfactory explanation is offered as to why he was at the shop at

the time of the accident which happened between 2 and 3 o'clock in the afternoon. He testified that he did not attend work that afternoon, although he was not ill, was not engaged in any mission which would justify his absence from work, and furthermore testified that he had been at the shop from 1 or 1:30 p. m. He did not testify before the district attorney or the municipal judge either, and although he stated that he was together with Suárez at the door of his shop and that both were looking at the same time towards the scene of the accident, Suárez, according to his testimony, was barely able to see the girls stretched out on the pavement, while witness Roger describes the accident in detail, from the moment that the chauffeur tried to put on the brakes and skidded, until the girls were overtaken and knocked to the ground.

"Corporal José María Rosario, who at the trial testified that Andrés M. Díaz had told him when he arrived at the scene of the accident that he was driving somewhat fast because he was a commission merchant and was going out on the island, during the course of the investigation before the district attorney, when asked whether Andrés M. Díaz had made any statements to him, merely said: 'He told me that the girls were a little drunk (tomadas).'

"The witness for the plaintiffs, Juan Herrero, who testified that the automobile was going at 40 kilometers per hour (25 miles) stated in the course of his testimony that he is not familiar with velocities.

"The witness for the plaintiffs, Alfredo Rodríguez, testified that the automobile was moving at 30 miles per hour, having testified beforehand to the district attorney that the speed of the vehicle was from 25 to 30 miles per hour.

"The witnesses for the defendant assert that the automobile was travelling slowly and that on approaching the girls they made a motion as if to cross the road, that then the chauffeur blew his horn and they became confused so that the chauffeur had to apply his brakes, and then and there followed the skid which caused the accident.

"The theory of the defendants seems to us more logical and reasonable than that of the plaintiffs and is supported by impartial witnesses, whose credibility we have no reason to doubt, and therefore after weighing the evidence of both parties as to this issue we hold that the preponderance thereof is in favor of the defendants."

In view of the fact that the burden of proof lies with the plaintiffs, the evidence introduced by them is in truth insuffi-

cient, and as the trial court says, took weak to base a judgment thereon, especially when compared to that of the defendants.

Contrary to what is maintained by the appellants in their fourth assignment, there is reasonableness, justice and impartiality apparent in the weighing of the evidence.

It likewise appears to us, as it did to the lower court, that the theory presented by the defendants of how the accident happened, is more logical. They say that as the road was wet with heavy rains which had fallen before and even at the moment of the accident, the automobile owned by Díaz made one or two zigzags when he applied the brakes to protect the deceased at the moment when she left the right-hand side where she was walking and attempted to cross the highway. In our opinion, the decision of this court in *Meléndez* v. *Alvarez,* 35 P.R.R. 316, is squarely applicable, where it says:

". . . . A rational and logical presumption contrary to that indulged by the trial judge is established by the jurisprudence in holding that the driver of a motor vehicle has the right to presume that a person standing in a place of safety will not suddenly leave that position and place himself in front of the vehicle. On the contrary, he has the right to assume that he will not so act. 3 Cal. Jur. 872."

The trial court did not err in the weighing of the evidence.

■ "That the lower court erred in failing to apply the law which determines what constitutes prima facie evidence that a vehicle has been driven without reasonable care."

In support of this assignment the appellants invoke sections 12, subdivisions (*a*) and (*e*) and 13, subdivision (*a*) of Act No. 75, approved on April 13, 1916 (p. 143) to regulate the operation of motor vehicles in Puerto Rico.

Inasmuch as the evidence introduced by the plaintiffs was insufficient to establish, to the satisfaction of the trial court, the speed at which the defendant was driving the vehicle at the moment of the accident, there is no basis for the pre-

sumption that the vehicle was being driven without due care. The provisions cited are therefore inapplicable.

The judgment appealed from should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.